UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **LORETTA ELAINE MINNIFIELD,** | } |
| | } |
| **Plaintiff,** | } |
| | } |
| v. | } Case No.: 2:13-CV-00015-MHH |
| | } |
| **CAROLYN W. COLVIN, Acting** | } |
| **Commissioner of the Social Security** | } |
| **Administration,** | } |
| | } |
| **Defendant.** | } |

# MEMORANDUM OPINION

Plaintiff Loretta Elaine Minnifield brings this action pursuant to Title XVI of Section 1631(c)(3) of the Social Security Act, seeking review of the decision by the Commissioner of the Social Security Administration[1] denying her claim for supplemental security income. *See* 42 U.S.C. § 1383(c). After careful review, the Court affirms the decision of the Commissioner of Social Security.

## I.   STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s]

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Therefore, she should be substituted for Commissioner Michael J. Astrue as Defendant in this suit. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer affecting the parties' substantial rights must be disregarded.").

the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## II.   PROCEDURAL AND FACTUAL BACKGROUND

Ms. Minnifield applied for supplemental security income on July 1, 2009. (Doc. 6-6, p. 2; Tr. 103-106).  In her application, Ms. Minnifield alleged her disability began on November 23, 2004.[2]  (*Id.*).  The Social Security Administration denied Ms. Minnifield's claim on November 13, 2009 (Doc. 6-4, p. 3; Tr. 52), and she requested a hearing before an Administrative Law Judge ("ALJ").  (Doc. 6-5, p. 46; Tr. 97-98).  The ALJ held a hearing on April 13, 2011. (Doc. 6-3, pp. 32-50; Tr. 31-50).  The ALJ denied disability benefits on May 16, 2011, concluding that Ms. Minnifield did not have an impairment or a combination of impairments listed in, or medically equal to one listed in, the Regulations. (Doc. 6-3, pp. 18-27; Tr. 17-30).  The ALJ found that Ms. Minnifield retained the residual functional capacity ("RFC") to perform work-related activities at the medium level of physical exertion, and that there would be jobs in the national economy that would accommodate Ms. Minnifield's limitations.  (Doc. 6-3, pp. 24-27; Tr. 23-26).

On November 2, 2012, the Appeals Council declined Ms. Minnifield's request for review of the ALJ's decision (Doc. 6-3, p. Tr. 1-6), making the Commissioner's decision final and a proper subject of this Court's judicial review. *See* 42 U.S.C. § 1383(c)(3).

---

[2] During her hearing, Ms. Minnifield amended her alleged onset date to July 1, 2009.  (Doc. 6-3, p. 35; Tr. 34).

At the time of her hearing, Ms. Minnifield was 57 years old, and she had completed the requirements for her GED. (Doc. 6-3, p. 37; Tr. 36). She previously worked as a housekeeper, hospital cleaner, and nurse's assistant. (Doc. 6-3, pp. 38-41; Tr. 37-42). Ms. Minnifield testified that she is unable to work due to significant breathing problems and pain in her hands, arms and back. (Doc. 6-3, p. 43; Tr. 42). She gets out of breath if she walks a short distance or walks up stairs. If she stands for more than two to three hours or exerts herself, she gets short of breath. She can perform daily household chores but must do them "little by little." (Doc. 6-3, p. 44; Tr. 43). Ms. Minnifield stated that she spends most of her day lying down due to pain and breathing problems. (Doc. 6-2, p. 45; Tr. 44).

In his decision, the ALJ found that Ms. Minnifield has not engaged in substantial gainful activity since July 1, 2009, the revised application date. (Doc. 6-3, p. 23; Tr. 22). The ALJ then concluded that Ms. Minnifield has the following severe impairments: chronic obstructive pulmonary disorder and early degenerative changes in the cervical spine. (Doc. 6-3, p. 23; Tr. 22). The ALJ noted that Ms. Minnifield suffers from other non-severe impairments including isolated instances of swelling. (Doc. 6-3, p. 24; Tr. 23). Nevertheless, the ALJ determined that Ms. Minnifield does not have an impairment or combination of impairments that meets or medially equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 6-3, p. 24; Tr. 23). The ALJ found

that Ms. Minnifield has the RFC to perform work at a medium level of exertion, except that she must avoid concentrated exposure to chemicals, dusts, fumes, and other environmental irritants. (Doc. 6-3, p. 24; Tr. 23). Finally, the ALJ concluded that given her age, education, work experience, and RFC, jobs existed in the national economy that Ms. Minnifield could perform, including cashier, assembler, general office worker, inspector or tester, and order filler. (Doc. 6-3, pp. 26-27; Tr. 25-26). Accordingly, the ALJ found that Ms. Minnifield has not been under a disability, as that term is defined in the Act, since July 1, 2009, the revised application date. (Doc. 6-3, p. 27; Tr. 26).

## III.   ANALYSIS

To be eligible for disability insurance benefits, a claimant must be disabled. *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. at 930. "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A claimant must prove that he is disabled. *Id.* (citing *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003). To determine whether a claimant is disabled, the Social Security Administration applies a five-step sequential analysis. *Gaskin*, 533 Fed. Appx. at 930.

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and

>   medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to other work, in the light of his residual functional capacity, age, education, and work experience.

*Id.* (citing 20 C.F.R. § 404.1520(a)(4)).  "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments."  *Id.* (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

Ms. Minnifield contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ: (1) improperly discounted the opinion of her treating physician, Dr. Jeremy Allen, and (2) improperly rejected the opinion of the agency consultative examiner, Dr. Rodolf Veluz.  (Doc. 8, pp. 5, 8).

In making his RFC determination, the ALJ noted that Ms. Minnifield's medically determinable impairments could reasonably be expected to cause her alleged symptoms but found her statements concerning the intensity, persistence, and limiting effects of those symptoms not fully credible.  (Doc. 6-3, p. 25; Tr. 24). The ALJ also reviewed the opinion evidence on record.  The ALJ gave the greatest weight to the opinion of Dr. Robert Heilpern, a non-examining reviewing consultant.  (*Id.*).  The ALJ adopted Dr. Heilpern's RFC in full because, according to the ALJ, his opinion "is well supported by the evidence of record, is based on

access to the claimant's medical history, and reflects [his] experience providing medical opinions in the context of disability review." (*Id.*).

The ALJ gave "little weight" to Dr. Veluz and Dr. Allen's medical opinions "due to their erroneous reliance on the claimant's breath testing results." (*Id.*). The ALJ also gave little weight to Dr. Allen's opinion due to his "overreliance upon the claimant's subjective complaints in making his medical findings." (*Id.*). Before turning to the question of whether the ALJ erred in rejecting the opinions of Dr. Veluz and Dr. Allen, the Court briefly reviews the opinion evidence in this case.

Dr. Veluz performed a consultative examination of Ms. Minnifield on October 26, 2009. (Doc. 6-8, p. 37; Tr. 231). Ms. Minnifield stated that she had suffered from chronic bronchitis since 1990. (*Id.*). She told Dr. Veluz that she smoked half a pack of cigarettes per day and had visited the emergency room for exacerbation of her chronic bronchitis but was never hospitalized. (*Id.*). Ms. Minnifield also complained of difficultly sleeping, especially when lying on her right side, neck pain, and shortness of breath. (*Id.*). Upon examination of her chest, Dr. Veluz noted that Ms. Minnifield's lungs showed "no wheezing, rhonchi, rales, decreased breath sounds, or increased AP chest diameter." (Doc. 6-8, p. 38; Tr. 232). Additionally, Ms. Minnifield demonstrated no prolonged expiration. (*Id.*). Her extremities displayed no clubbing, cyanosis, or edema. (*Id.*).

Additionally, her back showed no spasm or deformity and was non-tender. (Doc. 6-8, p. 39; Tr. 233). Ms. Minnifield had no trouble getting on and off the examination table but she was "unable to squat, heel/toe walk, or tandem gait because of pain." (*Id.*). Pulmonary function tests showed forced expiration volume in the first second (FEV1) in the range .51 to 1.19.[3] (Doc. 6-8, pp. 42-49; Tr. 236-243). Dr. Veluz diagnosed Ms. Minnifield with chronic bronchitis with significant obstructive disease. (Doc. 6-8, p. 39; Tr. 233).

In November 2009, state agency non-examining medical consultant Dr. Heilpern reviewed Ms. Minnifield's medical records and in a report opined that Ms. Minnifield retained the residual functional capacity to perform medium work despite having some degenerative changes in her neck. (Doc. 6-8, p. 40; Tr. 244). Specifically, Dr. Heilpern considered medical records from Ms. Minnifield's July 2009 visit to Cooper Green where xrays revealed early degenerative changes in her spine and where a physical examination revealed limited range of motion in her neck and muscle spasms. (*Id.*). Dr. Heilperm also reviewed records from a hospital visit in August 2009. At that time, Ms. Minnifield was diagnosed with bronchitis and "COPD acute exacerbation." (*Id.*). Dr. Heilpern also reviewed Dr. Veluz's October 2009 report. Dr. Heilpern found the pulmonary function test results that Dr. Veluz had relied on invalid because "the tracings are not

---

[3] Ms. Minnifield repeated the test six times with the following FEV1 scores: 1.19; 1.00; .69; .74; .51; and .78. (Doc. 6-8, pp. 42-49; Tr. 236-243).

reproducible" and the FEV1 values are not within required limits. *(Id.)*. Moreover, Dr. Heilpern opined the pulmonary function test "tracings," which graphically display the volume of forced exhalation over time, seemed to indicate [Ms. Minnifield] did not give maximum effort during the breathing test, "although she was advised that full cooperation and maximum effort were mandatory." *(Id.)*.

Dr. Allen provided routine care to Ms. Minnifield in 2010 and early 2011 for osteoarthritis (Doc. 6-8, pp. 65-66; Tr. 258-259), for bronchitis and hand and foot pain (Doc. 6-8, pp. 68-71, 74-75; Tr. 262-265, 268-269), and for hypertension and COPD (Doc. 6-8, pp. 68, 72-73; Doc. 6-9, pp. 19-20; Tr. 262, 266-267, 295-296). In April 2011, Dr. Allen examined Ms. Minnifield and provided a report of examination and functional assessment (Doc. 6-9, pp. 22-28; Tr. 298-304), in which he noted that Ms. Minnifield was a "reformed smoker," having quit in April 2010. (Doc. 6-9, p. 23; Tr. 299). During the April 2011 examination, Ms. Minnifield's chief complaints were: "get tired if I walk or bend over; just moving around makes me tired; walking a block makes me tired; if I do anything too long or too strenuous, I have to go lie down." (Doc. 6-9, p. 22; Tr. 298).

Dr. Allen also noted Ms. Minnifield's complaints of pain, which reportedly were relieved by rest, pain medication, shifting and changing positions, and were aggravated by standing, walking, laying, bending and lifting. (*Id.*) Dr. Allen described Ms. Minnifield as "independent" in most activities of daily living

9

(ADLs) but noted she required help from her son for lifting anything over 10 pounds. (*Id.*). In his report, Dr. Allen recorded examination results including normal gait, range of motion within normal limits, regular heart rate and rhythm, no sensation deficits, normal spine with no tender points and motor strength in upper and lower extremities normal and equal. (Doc. 6-9, p. 23; Tr. 299). Dr. Allen observed Ms. Minnifield had shortness of breath during examination. (*Id.*). Her blood oxygen saturation was measured at "100% on room air" (*Id.*). Based on his examination and review of "available medical records" (*Id.*), Dr. Allen opined:

> Her COPD does not meet list level criteria, as her FEV1 and DLCO are both above criteria based on her height and percentage expected. However, she has frequent exacerbations and, when coupled with her osteoarthritis, and the limitations in her ADLs, it is unlikely she will be able to compete in the competitive work environment.

(*Id.*).

Dr. Allen's report included a physical capacities assessment (which he indicated was based upon his physical exam and a review of Ms. Minnifield's medical records) and clinical assessment of pain forms.[4] In his physical capacities assessment, Dr. Allen opined that Ms. Minnifield could lift 10 pounds occasionally and less frequently, sit 3-4 hours, and stand 1 hour in an eight-hour day. (Doc. 6-9, p. 24; Tr. 300). He also indicated Ms. Minnifield could perform occasionally:

---

[4] The ALJ did not have Dr. Allen's report at Ms. Minnifield's April 13, 2011 hearing. (R. 49). The ALJ permitted Ms. Minnifield an additional two weeks to supplement the record with Dr. Allen's report. (*Id.*).

10

pushing and pulling movements; climbing (stairs or ladders); balancing; gross and fine manipulation activities; bending; stooping and reaching. (*Id.*). According to Dr. Allen's clinical assessment of pain form, Ms. Minnifield has pain, but not so much as to prevent functioning in everyday activities or work. (Doc. 6-9, p. 25; Tr. 301). Dr. Allen also opined that physical activity would cause an increase in pain, but not to such an extent as to prevent adequate functioning in tasks. (*Id.*). Finally, Dr. Allen opined that Ms. Minnifield's daily activities and work were negatively affected by "fatigue/weakness" and that physical activity increased her fatigue/weakness to such an extent that bed rest and/or medication is necessary. (Doc. 6-9, p. 27; Tr. 303).

Having examined the relevant opinion evidence and the ALJ's decision, the Court concludes that the ALJ properly rejected the opinions of Dr. Allen and Dr. Veluz. "[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.'" *Gaskin*, 533 Fed. Appx. at 931 (citing *Lewis*, 125 F.3d at 1440, and quoting *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1179 (11th Cir. 2011)). The ALJ did so here. An ALJ must give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding;

or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.*; *see also Crawford*, 363 F.3d at 1159. "The ALJ must clearly articulate the reasons for giving less weight to a treating physician's opinion, and the failure to do so constitutes error." *Gaskin*, 533 Fed. Appx. at 931. The opinion of a one-time examiner is not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986)); *see also Russell v. Astrue*, 331 Fed. Appx. 678, 681 (11th Cir. 2009) (citing *McSwain* and holding that the ALJ did not err in affording little weight to an examiner's opinion where the ALJ found the claimant's other records failed to support the opinion).

Here, the ALJ described with particularity his reason for rejecting Dr. Allen's opinion. The ALJ explained that Dr. Allen erroneously relied on breath testing results that Dr. Allen himself conceded did not meeting a listing.[5] (Doc. 6-3, p. 25; Tr. 24). The ALJ also rejected Dr. Allen's opinion "based upon his overreliance upon [Ms. Minnifield's] subjective complaints in making his medical findings." (Doc. 6-3, p. 25; Tr. 24). The record supports these conclusions. Thus,

---

[5] In his April 15, 2011 report, Dr. Allen stated that "FEV1 at 1.76 does not meet listing level criteria as established by the Social Security Disability Administration." He also noted that Ms. Minnifield's COPD "does not meet list level criteria, as her FEV1 and DLCO are both above criteria based on her height and percentage expected." (Doc. 6-9, p. 23; Tr. 299).

the ALJ had good cause for rejecting the opinion of Ms. Minnifield's examining physician, Dr. Allen. *See e.g.*, *Phillips*, 357 F.3d at 1241.[6]

The ALJ also stated with specificity his reason for giving little weight to Dr. Veluz's opinion. The ALJ determined that Dr. Veluz erroneously relied upon Ms. Minnifield's breath testing results. (Doc. 6-3, p. 25; Tr. 24). As a one-time examining physician, the ALJ was not required to afford special deference to Dr. Veluz's opinion. *See McSwain*, 814 F.2d at 619. Even if entitled to some deference, the ALJ concluded that Dr. Veluz's opinion was not properly supported by the medical evidence. Substantial evidence in the record supports the ALJ's decision to reject Dr. Veluz's opinion. *See e.g.*, *Phillips*, 357 F.3d at 1241.[7]

---

[6] The Court rejects Ms. Minnifield's argument that the ALJ was required to recontact Dr. Allen pursuant to Social Security Ruling 96-5p and 20 C.F.R. § 416.912(e). (Doc. 8, p. 8). The reasons for Dr. Allen's conclusions were clearly expressed in his examination and treatment notes, and this information was not inadequate or incomplete. Therefore, the ALJ did not have to recontact Dr. Allen. *See Shaw v. Astrue*, 392 Fed. Appx. 684, 688-89 (11th Cir. 2010) (ALJ did not err in failing to recontact the claimant's treating physician because additional contact is only necessary where the basis of the treating physician's opinion cannot be ascertained); *Johnson v. Barnhart*, 138 Fed. Appx. 853, 855 (11th Cir. 2005) (ALJ did not err in failing to recontact a treating physician because there was nothing more the doctor could have provided to the ALJ, and the claimant pointed to no evidentiary gap)

[7] The Court also rejects Ms. Minnifield's argument that the ALJ was required to recontact Dr. Veluz pursuant to C.F.R. § 416.919p. Dr. Veluz's report was not inadequate or incomplete. And, as explained in greater detail below, the ALJ based his decision on other medical evidence in the record. Therefore, it was not necessary for the ALJ to recontact Dr. Veluz. *See Robinson v. Astrue*, 365 Fed. Appx. 993, 999 (11th Cir. 2010) (finding that the ALJ and Appeals Council did not err in failing to recontact a medical source where there was already sufficient information for determining the claimant's impairments, RFC, and ability to work).

Having rejected the opinions of Dr. Allen and Dr. Veluz, the ALJ based his RFC assessment on Dr. Heilpern's findings.[8] Ms. Minnifield contends that substantial evidence cannot support the ALJ's decision to give the greatest weight to Dr. Heilpern's opinion because: (1) he never examined her; and (2) he provided an opinion at a time when over half of the medical evidence was not of record. (Doc. 8, p. 11). These arguments are not persuasive.

First, the Court rejects Ms. Minnifield's contention that because Dr. Heilpern provided an opinion without the benefit of Dr. Allen's formal findings and some portion of Dr. Allen's treatment records, the ALJ should not have afforded great deference to Dr. Heilpern's conclusions. Although Dr. Heilpern did not review Dr. Allen's opinion, the ALJ had the benefit of examining the entire record, including Dr. Allen's examination notes and formal assessment. If neither the ALJ nor Dr. Heilpern had access to Dr. Allen's treatment notes and findings, the Court may be inclined to find that substantial evidence would not support the ALJ's decision to rely upon Dr. Heilpern's RFC assessment. *See Lewis v. Astrue*, 2012 WL 5868615, at *9 (S.D. Ala. Nov. 20, 2012). However, as it stands, the ALJ referred to specific medical evidence of record and properly rejected Dr. Allen's opinion. Therefore, the Court finds no merit to this particular argument.

---

[8] Ms. Minnfield argues that the ALJ substituted his judgment for the judgment of Ms. Minnifield's treating and examining physicians. (Doc. 8, pp. 10-11). The record demonstrates that the ALJ relied upon Dr. Heilpern's opinion and did not substitute his judgment for that of Dr. Heilpern or Ms. Minnifield's treating and examining physicians. (Doc. 6-3, pp. 24-25, 244).

Second, the Court concludes that the ALJ was free to rely upon Dr. Heilpern's opinion even though he never examined Ms. Minnifield.  The Eleventh Circuit has recognized that the "opinions of nonexamining, reviewing physicians, when contrary to the opinion of a treating physician, are entitled to little weight and do not, 'taken alone, constitute substantial evidence.'"  *Gray v. Comm'r of Soc. Sec.*, 2013 WL 6840288 *3 (11th Cir. Dec. 30, 2013) (per curiam) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)).  Nevertheless, if an ALJ properly discounts a treating physician's opinion, then an ALJ may rely on contrary opinions of non-examining physicians.  *See  Wainwright v. Comm'r of Soc. Sec.*, 2007 WL 708971 (11th Cir. Mar. 9, 2007) (per curiam) (holding that the ALJ properly assigned substantial weight to non-examining sources when he rejected a treating psychologist's opinion and stated proper reasons for doing so); *Ogranaja v. Comm'r of Soc. Sec.*, 186 Fed. Appx. 848, 850-51 (11th Cir. 2006) (per curiam) (noting that an ALJ may consider reports and assessments of state agency physicians as expert opinions and finding that the ALJ's decision was supported by substantial evidence because the ALJ "arrived at his decision after considering the record in its entirety and did not rely solely on the opinion of the state agency physicians.").

Although the ALJ adopted Dr. Heilpern's RFC assessment in full, the ALJ did so after properly rejecting the other opinion evidence of record.  Moreover, the

15

ALJ assessed other medical evidence that established diagnoses of "mild chronic obstructive pulmonary disorder" and "diagnostic imaging of [Ms. Minnifield's] lungs showing no significant findings." (Doc. 6-2, p. 24; Tr. 23). Therefore, the ALJ did not rely solely upon the opinion of a state agency physician in making RFC findings. Accordingly, substantial evidence supports the ALJ's decision to deny benefits. *See e.g.*, *Osborn v. Barnhart*, 194 Fed. Appx. 654, 667 (11th Cir. 2006) (per curiam) (holding that the ALJ did not err in giving more weight to a non-examining physician and minimal weight to the treating physician because the treating physician's opinion was not supported by objective medical evidence); *Wilkinson v. Comm'r of Soc. Sec.*, 289 Fed. App'x. 384, 386 (11th Cir. 2008) (per curiam) ("The ALJ did not give undue weight to the opinion of the non-examining state agency physician because he did not rely solely on that opinion.").

## IV.  CONCLUSION

For the reasons outlined above, the Court concludes that the ALJ's decision is based upon substantial evidence, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Accordingly, the decision of the Commissioner is due to be affirmed. The Court will enter a separate order consistent with this memorandum of opinion.

Case 2:13-cv-00015-MHH Document 11 Filed 07/31/14 Page 17 of 17

**DONE** and **ORDERED** this July 31, 2014.

_____

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

17